UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DAVID BERRY,<br><br>   Defendant. | Case No. 25-CR-000142 (TSC) |

## MOTION FOR EMERGENCY REVIEW AND APPEAL OF RELEASE ORDER

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, seeks this Court's emergency review of the release order issued by the Honorable Matthew J. Sharbaugh on May 22, 2025. The Government requests that the Court hear an appeal to review and overturn Magistrate Judge Sharbaugh's denial of the Government's motion for pre-trial detention pursuant to 18 U.S.C § 3142 (f)(1)(E) (felony involving the possession of a firearm) as to Defendant Berry. On May 6, 2025, following a welfare check for the driver of a vehicle stopped in the middle of the road, police recovered a loaded firearm that fell to the ground from the Defendant's person and an extended magazine from his pants pocket. The Defendant has three prior convictions for offenses that involve the possession a firearm; two of those cases also involved the possession of drugs with the intent to distribute. The Defendant also has a history of reoffending while on supervision. Given the facts of the instant case and the Defendant's criminal history, there are no conditions of release that can assure the safety of the community if Mr. Berry is released.

## BACKGROUND

1

*The Instant Offense*

On Tuesday, May 6, 2025, just before 6:00 a.m., Metropolitan Police Department ("MPD") officers Robel Petros and Charles Weems were dispatched to investigate an individual slumped over the wheel of a vehicle at the intersection of Massachusetts Avenue NW and H Street NW, Washington, D.C. When they arrived, Officers Petros and Weems found the vehicle stopped in a crosswalk, obstructing at least one lane of traffic. The Defendant was in the driver's seat, unconscious, with his foot on the brake. Keys were in the ignition, and the vehicle was in drive. According to a witness on scene, the Defendant's car had been stopped in the crosswalk for about half an hour.



*Screenshot from MPD Officer Petros's Body Worn Camera ("BWC")
showing the Defendant's vehicle.*

Officers turned the vehicle off and attempted to rouse the Defendant, first by knocking on the windows and then by tapping him and performing a sternum rub. When the Defendant woke

up, officers asked him to step out of the vehicle. The Defendant seemed to have trouble following this instruction and appeared to officers to be under the influence of an unknown substance.



*Screenshot from MPD Officer Weems's BWC showing the Defendant unconscious in the vehicle*

Ultimately, Officer Petros helped the Defendant out of the vehicle. As the Defendant stood up and adjusted his pants, a firearm fell to the ground in front of the Defendant. A civilian witness standing nearby yelled "firearm, firearm" as the gun fell to the ground. The gun falling from the Defendant's body to the ground is clearly captured on Officer Weems's BWC.

3





*Screenshots from MPD Officer Weems's BWC showing*

*the Defendant and firearm after being dropped*

The firearm was a 10mm Glock 29 (serial number BWKB046) loaded with 1 round in the chamber and 7 rounds in a 10-round capacity magazine.

4



*Picture of the Firearm, Ammunition, and the Magazine*

After the loaded firearm fell from the Defendant and while it was lying unsecured in the street, the Defendant resisted officers and appeared to take a step towards the firearm. It took two MPD officers and a Special Police Officer ("SPO"), who was standing on the sidewalk when the firearm fell to the ground, to restrain and handcuff the Defendant. After placing the Defendant in handcuffs, Officer Weems searched the Defendant and recovered an extra, fully loaded fifteen-round capacity magazine from the Defendant's left front pants pocket. The additional magazine was loaded with 10mm ammunition, consistent with the firearm the Defendant dropped on scene.



*Picture of the Additional Ammunition and Magazine*

The Defendant is prohibited from possessing a firearm under both Federal and District of Columbia law because he has been convicted previously of crimes punishable by more than one year of imprisonment. Despite that prohibition, the Defendant possessed a 10mm handgun loaded with 1 round in the chamber, 7 rounds in the magazine. He also had 15 rounds of 10mm ammunition in an extra magazine in his pocket.

**<u>Defendant Berry's Criminal History</u>**

The Defendant has repeatedly violated firearms laws and has repeatedly proven himself unwilling or unable to comply with conditions of release. In August 2017, the Defendant was charged in D.C. Superior Court, case number 2017-CF2-013232 with Carrying a Pistol Without a License ("CPWL") in violation of 22 D.C. Code § 4504(a)(1). There, MPD officers recognized the Defendant as having an outstanding arrest warrant for possession of an unregistered firearm, unregistered ammunition, and large capacity feeding device. Upon arresting the Defendant, MPD officers found the Defendant to have within his compression shorts a Colt .45 Commander pistol loaded with one round in the chamber and several rounds in the magazine, which had a capacity

of more than 10 rounds. The Colt .45 also was reported stolen out of Richmond County, Georgia. The Defendant pled guilty and was sentenced on July 24, 2019, to a suspended 6-month term of imprisonment and 18 months' supervised probation.

The Defendant's probation in 2017-CF2-013232 was terminated unsatisfactorily because in January 2021, the Defendant was rearrested and charged in D.C. Superior Court Case No. 2021-CF2-000249 with Unlawful Possession With Intent to Distribute a Controlled Substance (Cocaine) While Armed in violation of 48 D.C. Code § 904.01(a)(1) and 22 D.C. Code § 4502. Specifically, MPD officers observed an unidentified individual standing outside of a vehicle engaged in what appeared to be a hand-to-hand drug transaction with two subjects inside the vehicle, one of whom was the Defendant sitting in the rear right passenger seat. As MPD officers approached, the Defendant leaned over towards the left portion of the back seat and appeared to be franticly manipulating something in the left rear-seat-area with both hands. MPD officers observed two pistols in the rear right passenger's map-pocket, which were inches from the Defendant's hands. The first gun – a 9mm Ghost Gun – was loaded with 1 round in the chamber and 17 rounds in a 30-round capacity magazine. The second gun – a 9mm Springfield Armory handgun – was loaded with 1 round in the chamber and 12 rounds in a 13-round capacity magazine.

Beyond finding those two pistols, a third pistol was recovered on the floor under the front passenger seat. This third gun – a 9mm Beretta – was loaded with 1 round in the chamber and 7 rounds in the magazine. This gun was reported stolen out of Lamar County, Mississippi.

MPD officers also recovered the following from the back seat area where Defendant Berry was observed manipulating something: (1) approximately 37 grams of a white powdery substance that was suspected amphetamines; (2) approximately 27 grams of a white powdery substance that was suspect fentanyl; and (3) 178 grams of plant material that was suspected synthetic

7

cannabinoids. Moreover, MPD officers recovered approximately 6 grams of a white rock-like substance that was suspected cocaine base from the Defendant's pants pocket, along with $660.00 in United States Currency. Finally, the Defendant provided MPD officers with a false name; he told them that his name was David Byrd with a date of birth of October 22, 2021. However, when he was fingerprinted, MPD officers determined his real name is David Berry with a date of birth of November 4, 1997.

On April 21, 2021, the Defendant plead guilty to Possession with Intent to Distribute (Cocaine) in violation of 48 D.C. Code § 904.01(a)(1) and Unlawful Possession of a Firearm (Prior Conviction) in violation of 22 D.C. Code § 4503(a). The Defendant admitted to possessing $660 and the aforementioned cocaine, which he possessed with the intent to distribute. He also admitted to possessing two separate firearms while being a convicted felon—a 9mm Ghost Gun and a Black Springfield Armory 9mm handgun. *See* Factual Proffer, Dkt. Entry dated April 21, 2021, in D.C. Superior Court Case No. 2021-CF2-000249. On August 21, 2021, the Defendant was sentenced on the drug charge to 16 months' incarceration, execution suspended as to all but 12 months, with 1 year of supervised probation. He was also sentenced to a concurrent 12-month term of incarceration on the firearm charge. While on probation in 2021-CF2-000249, the Defendant repeatedly tested positive for cocaine use and failed to participate in rehabilitative programing assigned by his probation officer. *See* Notice of Non-Compliance, Dkt. Entry date August 23, 2022, in D.C. Superior Court Case No. 2021-CF2-000249.

On August 17, 2022, while he was still on probation, the Defendant was arrested and later charged with possessing another firearm, in D.C. Superior Court, Case No. 2022-CF2-004786. On October 19, 2022, in the same case, the Defendant was indicted on the following charges: (1) Unlawful Possession With Intent to Distribute a Controlled Substance While Armed in violation

of 48 D.C. Code § 904.01(a)(1) and 22 D.C. Code § 4502; (2) Possession of a Firearm During a Crime of Violence of Dangerous Offense in violation of 22 D.C. Code § 4504(b); (3) Unlawful Possession of a Firearm (Prior Conviction), in violation of 22 D.C. Code, § 4503(a)(1); (4) CPWL in violation of 22 D.C. Code § 4504(a)(1); (5) Possession of a Large Capacity Ammunition Feeding Device, in 7 D.C. Code, § 2506.01(b); (6) Possession of Unregistered Firearm, in violation of 7 D.C. Code, § 2502.01(a); and (7) Unlawful Possession of Ammunition, in violation of 7 D.C. Code, § 2506.01(a)(3). Specifically, the Defendant was inside a tent where United States Park Police ("USPP") officers believed hand-to-hand drug transactions were occurring. After stopping the Defendant, USPP officers found the Defendant to be in possession of a 9mm Taurus Millennium handgun loaded with 1 round in the chamber and 10 rounds in the magazine, along with approximately 44 grams of fentanyl in his groin and $480 in small denominations of United States currency. The resale value of that fentanyl was approximately $4,400. On December 20, 2022, the Defendant plead guilty to CPWL and, on March 9, 2023, received a jail-only sentence in his third firearm conviction.

Finally, the Defendant also has other concerning criminal contacts. In March 2017, the Defendant was arrested for CPWL here in the District of Columbia and charged in D.C. Superior Court Case No. 2017-CF2-004086; however, the case was dismissed in May 2017. Additionally, in November 2023, the Defendant was arrested for PWID Cocaine and PWID Phencyclidine ("PCP"). This case, too, was dismissed.

*Procedural History*

The Defendant was arrested immediately after MPD officers discovered the firearm. On May 7, 2025, the United States charged the Defendant by criminal complaint in the Superior Court of the District of Columbia with 22 D.C. Code § 4503(a)(1) (unlawful possession of a firearm by

9

a person convicted of a crime punishable by imprisonment exceeding one year) and 22 D.C. Code § 4504(a)(1) (carrying a pistol without a license [outside home or place of business]).

On May 9, 2025, the Defendant waived his preliminary hearing in Superior Court. After hearing arguments from both parties, Magistrate Judge Gerald Fisher determined that given the nature and circumstances of the offense, the Defendant's convictions for firearm-related offenses, and the weight of the evidence, the Defendant would pose a danger to the community if he were release from custody and that no condition or combination of conditions of release would reasonably assure the safety of any other person in the community. The Defendant was held without bond pending trial in the D.C. Superior Court case until the Government entered a nolle prosequi since the Defendant is now charged for the same conduct before this Court.

On May 15, 2025, a grand jury indicted Defendant Berry on one count of violating 18 U.S.C. § 922(g)(1) (Unlawful Possession of a Firearm). On May 19, 2025, at the Defendant's initial appearance, the Government orally moved for detention pursuant to 18 U.S.C. § 3142(f)(1)(E) (felony involving the possession of a firearm).

On May 22, 2025, a detention hearing was held before Judge Sharbaugh. Judge Sharbaugh heard arguments from both sides and questioned a proposed third-party custodian, the defendant's mother. Defendant Berry's mother testified that she lives in Washington, D.C., with Defendant Berry and her four other adult children. She works as an intake hotline specialist with the Child and Family Service Agency in Washington, D.C. She works evenings from home so does not need to leave the house to go to work. Ms. Berry testified that she could remain home with the Defendant except for when she needed to go to the grocery store or attend medical appointments, at which time her adult daughter could supervise the Defendant. She indicated that her home is equipped with an alarm system and a camera system that would record if the Defendant attempted to leave

10

the house.

Judge Sharbaugh denied the Government's motion for detention and ordered that the defendant be released into home detention at his mother's home, with his mother as third-party custodian. At the end of the hearing, the Government orally moved for a temporary stay of the Court's release order, to allow the Government to file an appeal. The Court denied the request.

## LEGAL AUTHORITY

Title 18, U.S.C. § 3145(a) states:

(a) **Review of a release order** - If a person is ordered released by a magistrate, . . .

(1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release . . .

The motion shall be determined promptly.

On the Government's motion to review a release order, this Court considers *de novo* the Magistrate Judge's denial of pretrial detention. Although the D.C. Circuit "ha[s] not squarely decided the issue," *United States v. Munchel*, 991 F.3d 1273, 1280 (D.C. Cir. 2021), every other circuit to have analyzed the issue has concluded the standard is *de novo*. *See United States v. Blackson*, No. 23-cr-25 (BAH), 2023 U.S. Dist. LEXIS 18988, at *15 n.2 (D.D.C. Feb. 6, 2023) (collecting Court of Appeals cases from the First, Second, Third, Fourth, Fifth, Eighth, Ninth, and Tenth Circuits that support this proposition).

In its discretion, the Court may proceed to rehear the evidence by recalling the witnesses, reviewing transcripts, or by proceeding through proffer and argument. It may take additional evidence from new witnesses or consider arguments not raised previously. In short, the Court may proceed as best enables it to resolve the question posed: whether any condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any

other person and the community.

Under the relevant detention statutes, pretrial detention must be supported by clear and convincing evidence when the justification involves the safety of the community. *U.S. v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987). A defendant must be detained pending trial, if the Court determines that no condition or combination of conditions "will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). A finding of either risk of flight or danger is sufficient for detention. *See, e.g.*, *United States v. Ferranti*, 66 F.3d 540, 543-44 (2nd Cir. 1995). In considering whether there are conditions of release, which will reasonably assure the safety of any other person and the community, and the appearance of the defendant as required, the Court should consider and weigh the following factors: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

## ARGUMENT

A review of the § 3142(g) factors makes clear that no condition or combination of conditions will assure the safety of the community if Defendant Berry is released.

I. **The Nature and Circumstances of this Offense Merits Detention.**

The first factor to be considered, the nature and circumstances of the offense charged, weighs in favor of detention. Defendant Berry is charged with a serious offense carrying significant penalties. For violating 18 U.S.C. § 922(g), Defendant Berry faces a maximum sentence of up to fifteen years' imprisonment. And Congress specifically highlighted an offense such as this—an offense involving a firearm—as the type of dangerous offense which justifies a detention hearing.

While the defendant is charged with a possessory offense, this Court has warned against discounting the inherent danger associated with loaded firearms. *See United States v. Blackson*, No. 23-CR-25 (BAH), 2023 WL 1778194, at *7-8 (D.D.C. Feb. 6, 2023), *aff'd,* No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023) (the absence of evidence of "use" "does little to detract from" the danger posed by a firearm "loaded with 19 rounds of ammunition in an extended magazine, . . . more ammunition than the gun was originally manufactured to carry, thereby increasing its potential to do greater harm" and placement "at the ready, on his person, and easily within reach"). Here, not only was this firearm loaded with a round in the chamber, *see United States v. Kent*, 496 F. Supp. 3d 500, 502 (D.D.C. 2020), *aff'd* (Nov. 5, 2020) (finding that a defendant should be detained pretrial in part because "the firearm recovered from the defendant's person had a round already chambered, making the circumstances even more troubling,"), but it was loaded with 7 more rounds in the magazine. Alarmingly, the Defendant also had an additional 15 rounds in a fully loaded magazine in his pants pocket. The Defendant went out into the community—while seemingly intoxicated—ready to fire his gun 23 times.[1]

Unlawful gun possession is so problematic because the number of violent crimes committed with guns in the District continues to rise: in the past three years (May 22, 2022 to May 22, 2025), violent crimes committed with a firearm went up by 1,138 compared to the previous three years.[2] Similarly, the homicide rate has remained high in recent years: as of May 22, 2025, there have been 61; in 2024, there were 187 homicides; in 2023, there were 274 homicides; in 2022, there were 203 homicides.[3]

---

[1] Emergency medical technicians from American Medical Response evaluated the Defendant at the arrest location. As indicated in their patient care report, they determined – after assessing the Defendant – based upon their training and experience, that the Defendant presented as having taken some form of drug as indicated by his constricted pupils.
[2] *See Crime Cards*, Metro. Police Dep't
https://crimecards.dc.gov/all:violent%20crimes/with%20a%20gun/3:years/citywide:heat (last visited May 22, 2025).

[3] *See District Crime Data at a Glance: 2024 Year-to-Date Crime Comparison, Metro Police Dep't,*

13

Additionally, as Judge Sharbaugh noted in his ruling, the circumstances of this specific gun possession are concerning. At the time of the offense, the Defendant was under the influence of an unknown substance. Police had rouse him while he was passed out at the wheel of a running vehicle. The gun he possessed had a round in the chamber. In his altered state, the Defendant could have fired or accidentally discharged that firearm in an instant and injured officers, the civilian witnesses on the sidewalk, or himself.

As such, the nature and circumstances of this offense weighs heavily in favor of detention.

## II.  The Weight of the Evidence Against the Defendant is Formidable.

The second factor to be considered, the weight of the evidence, also weighs in favor of detention.[4] Here, the Government's case against the Defendant is extremely strong.

The Defendant had a firearm on his person, and it dropped to the ground in front of two MPD officers and two civilian witnesses standing feet away from the Defendant. The firearm falling from the Defendant's body is captured on video. Additionally, the Defendant had an extended magazine loaded with 10mm ammunition—consistent with the caliber of the firearm— in his pocket.

"If the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the

---

http://mpdc.dc.gov/page/district-crime-data-glance (last visited May 22, 2025)

[4] This factor should be equally weighed. In *United States v. Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, then Chief Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." 2023 WL 1778194, at *8. Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* at *10. In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). The Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor.

community if the government's allegations later prove to be true." *Blackson*, 2023 WL 1778194, at *10. This is such a case, and the Defendant should be detained pretrial.

### III.   The Defendant's History and Characteristics Weigh in Favor of Detention.

The third factor, the Defendant's history and characteristics likewise favor of detention. The Defendant's record demonstrates both a pattern of possessing firearms and a pattern of violating release conditions.

If he is found guilty, the instant case will represent the Defendant's fourth adult conviction for possessing firearms.[5] In connection with at least one prior conviction, 2021-CF2-00249, the Defendant also possessed drugs alongside a gun. Here, although officers did not recover any drugs from the Defendant, he appeared to be under the influence of an unknown substance, while driving and carrying a firearm with an additional extended magazine. The Defendant's pattern of possessing firearms in violation of the law suggest that he will continue to carry loaded firearms into the community.

The Defendant's history on probation also suggests an unwillingness or inability to comply with court orders. The Defendant has been on probation twice for firearms offenses – and twice, his probation has ended unsuccessfully because he has been arrested and convicted of new firearms offenses. He has also failed probation-ordered drug tests and failed to report as instructed to rehabilitative programs.

### IV.   The Danger to the Community Created by Defendant's Release Weighs in Favor of Detention

The fourth and final factor, danger to any person or the community posed by Defendant Berry's release, similarly weighs in favor of detention.

---

[5] This does not include a fifth instance in March 2017, where the Defendant was charged in now-dismissed D.C. Superior case 2017-CF2-004086.

15

"At the outset, it cannot be gainsaid that unlawful possession of a firearm that is unregistered and fully loaded, with an extended capacity magazine, carried in a position of easy, quick access poses a significant danger to other persons and the community." *Blackson*, 2023 U.S. Dist. LEXIS 18988, at *33. The Defendant's possession of this firearm alone—especially while apparently inebriated—presented a significant danger to our community. *See United States v. Washington*, 907 F. Supp. 476, 486 (D.D.C. 1995) ("[P]ossession by a felon of a fully loaded semi-automatic pistol suggests that the defendant presents an extreme safety risk to the public."). His criminal history—which reflects a pattern and practice of both illegal gun and drug possession—underlines this risk.

Additionally, the Defendant's criminal conduct—including his past admission to possessing a ghost gun and doing so as a convicted felon in D.C. Superior Court Case No. 2021-CF2-000249—underscores his dangerousness to the community. Ghost guns are untraceable firearms without serial numbers. Ghost guns are privately made firearms that are assembled by individuals from parts or DIY (Do-It-Yourself) kits or that include one unfinished piece—typically the frame or receiver—that requires the purchaser to take steps (such as drilling) to make the gun fully functional. Ghost guns pose a unique risk to the community because their creation and possession circumvents background checks, which would have prevented the Defendant from possessing a firearm as a convicted felon. Indeed, between 2017 and 2023, law enforcement recovered 92,702 untraceable ghost guns, which were obtained without background checks and do lack serial numbers. Moreover, the number of ghost guns recovered in crimes across the United States surged nearly 1,600% (from 1,629 to 27,490) with almost 1,700 being connected homicides and over 4,000 linked to separate violent crimes.[6]

---

6 https://www.justice.gov/archives/opa/pr/justice-department-announces-atfs-publication-final-volume-national-firearms-commerce-and (Last visited May 21, 2025)

16

The D.C. Circuit has noted that "'[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community,'" pretrial detention is available to "'disable the arrestee from executing that threat.'" *United States v. Munchel*, 991 F.3d 1273, 1280 (D.C. Cir. 2021) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)). This requires the Court to make a "forward looking determination" about the Defendant's risk of danger to the community, keeping in mind that detention may be justified even if the Court does not explicitly find that Defendant is a risk of committing acts of violence. *United States v. Hale-Cusanelli*, 3 F.4th 449, 456 (D.C. Cir. 2021) (citing *Munchel*, 991 F.3d at 1283). Here, the Defendant poses an obvious and articulable threat to the community: he continues to possess illegal loaded firearms as a convicted felon while both possessing and using drugs. Accordingly, the Defendant should be detained pretrial in this case.

## V.     A Third-Party Custodian Cannot Ensure the Safety of the Community

Magistrate Judge Sharbaugh found that the Defendant's mother could effectively supervise the Defendant and mitigate the danger he presents. The Government has no reason to doubt Ms. Berry's sincere desire to help her son and keep him out of prison and believes she will report violations she observes as required. While courts have endorsed third-party custodians, such a custodian makes more sense where a defendant is young and willing to submit to an authority figure. *See United States v. Long*, 2020 WL 2434588 at *2 (W.D. Pa.) ("An authority figure who enters the picture and takes charge of a young and unsophisticated offender provides greater protection to the community than does a third-party custodian who is essentially a peer (or spouse in this case) of the defendant, especially one who is socially affiliated with the defendant during the time the defendant is alleged to have committed very offenses charged.")  The Defendant is not a child.  He is 28 years old and already has accumulated three prior firearm convictions.  The

Government is concerned that the Defendant will not agree to submit to his mother's authority in light of his age.

Indeed, the challenge faced by third party custodians, who are essentially being asked to act like correctional officers twenty-four-hours a day for someone they care for deeply, has repeatedly been recognized by courts in this jurisdiction. *See* Order (ECF No. 14), *United States v. Joyner*, 22-CR-252 (TNM) (D.D.C. Aug. 3, 2022) (reversing the magistrate court's order releasing the defendant to a third-party custodian); Order (ECF No. 55), *United States v. Handy*, 22-CR-164 (RBW) (same), *aff'd*, Case No. 22-3045, D.C. Cir. (2022); Order, ECF 54, *United States v. Charles Cunningham*, 23-CR-7 (JMC) (D.D.C. March 13, 2023) ("third-party custodian, no matter how competent or dedicated, cannot stand in the shoes of the defendant. Nor should a third-party custodian be cast in the role of jailer…. Mr. Cunningham's custodians cannot supervise his behavior on a 24/7 basis."); Order, ECF 18, *United States v. Trevor Wright*, 22-CR-410 (CRC) (D.D.C. Dec. 23, 2022) ("family members are not correctional officers. Nor should they be expected to play that role"). To convert the Defendant's mother into his warden is simply not a viable solution for keeping the community safe.

The Defendant has been living with Ms. Berry every time was arrested (and convicted) for firearm offenses and every time he violated probation. The proposed conditions of release place him back in precisely the same living situation that he has been in his entire adult live. Ms. Berry—despite her best efforts and sincere intentions—has not been able to keep him from engaging in criminal activity in the past. If he is released again, the Court has no assurances that he will not continue the same behaviors and that he will not continue to pose e a danger to the community.

## **CONCLUSION**

For all the foregoing reasons, the Government respectfully requests that the Court reverse

Judge Sharbaugh's decision and detain the Defendant pending trial.

                Respectfully submitted,

                JEANINE FERRIS PIRRO
                UNITED STATES ATTORNEY

        By: */s/ Megan E. McFadden*
            MEGAN E. MCFADDEN
            Assistant United States Attorney
            M.A. Bar Number 687959
            United States Attorney's Office
            601 D Street NW
            Washington, D.C. 20530
            Telephone: 202-252-7052
            Email: megan.mcfadden@usdoj.gov